UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LAURA PECK,

       Plaintiff,

v.
                                       Case No. 07-10167

OAKLAND COUNTY, MICHAEL
BOUCHARD, MICHAEL McCABE,        Honorable Patrick J. Duggan
DOUGLAS EADER, PAMELA
NEWSOME, CAROL VANLEUVEN,
MARK MORRISSEY, MARGARET
SCHOOLEY, VICKY LOPEZ, and PAM
NEWBY,

       Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 15, 2008.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

On January 9, 2007, Laura Peck ("Plaintiff") filed this action against Oakland

County ("County"), Michael Bouchard, Michael McCabe, Douglas Eader, Pamela

Newsome, Carol Vanleuven, Mark Morrissey, Margaret Schooley,[1] Vicky Lopez, and

_____

     [1]Defendant Margaret Schooley is referred to in the transcript of her deposition as
Margaret Hanson. For ease of reference, however, the Court will refer to her as Margaret
Schooley.

Pam Newby (collectively referred to as "Defendants") after she was allegedly forced to resign from her position as a nurse in the Oakland County Jail ("OCJ"). In her amended complaint, Plaintiff alleges deprivations of her constitutional rights under 42 U.S.C. § 1983, state and federal law retaliation and discrimination claims, and state law claims for breach of contract, civil conspiracy, and gross negligence.[2] Presently before this Court is Defendants' motion for summary judgment. The Court held a hearing on Defendants' motion on January 24, 2007.

## I.   Factual Background

Defendants include the County and various County employees or officials who were "directly involved in setting the policies and procedures for the [OCJ], the OCJ clinic, and other correctional facilities within the County of Oakland."[3]  (Am. Compl. ¶ 3.)

Plaintiff is a registered nurse and began working as a temporary employee in the

---

[2]More specifically, Plaintiff's amended complaint, which was filed on February 13, 2007, asserts the following thirteen counts: Count I (42 U.S.C. § 1983 First Amendment Retaliation); Count II (42 U.S.C. § 1983 Fourteenth Amendment Procedural Due Process Violation); Count III (42 U.S.C. § 1983 Fourteenth Amendment Substantive Due Process Personal Security/Bodily Integrity); Count IV (42 U.S.C. § 1983  Fourteenth Amendment Substantive Due Process Good Name and Reputation); Count V (42 U.S.C. §§ 12101 *et seq.* Americans with Disabilities Act Discrimination); Count VI (42 U.S.C. §§ 1201 *et seq.* Americans with Disabilities Act Retaliation); Count VII (Michigan Persons With Disabilities Civil Rights Act Failure to Accommodate and Wrongful Discharge); Count VIII ( Michigan Persons With Disabilities Civil Rights Act Retaliation); Count IX (M.C.L. 418.301(11) Workman's Compensation Act Retaliation); Count X (Breach of Contract, Legitimate Expectation of Continuing Employment); Count XI (Constitutional Violations Oakland County); Count XII (Conspiracy); and Count XIII (Gross Negligence).

[3]Plaintiff's amended complaint refers to Defendants collectively without specifying which particular Defendant or Defendants she is referring to.

OCJ medical clinic on November 2, 2005. During the seven months she worked as a temporary employee in the OCJ clinic, Plaintiff called in sick approximately two days per month. (*See* Dfts.' Mot. Ex. C, Mark Morrissey Dep. at 29 (hereinafter referred to as "Morrissey Dep."); *see also* Pl.'s Mot. Ex. G, Pl.'s Attendance Record.) As part of the annual requirements for being a registered nurse, Plaintiff was trained in infection control and had obtained a certificate of awareness in blood-borne pathogens. (*Id.* at 43-44.)

On or about June 6, 2006, Plaintiff was hired as a full-time employee at the OCJ. Like all newly hired County employees, Plaintiff was required to undergo a six-month probationary period. Upon successful completion of the six-month probationary period, Plaintiff's employment would be considered permanent. (Dfts.' Mot. Ex. D.) Moreover, Plaintiff's job application, which was signed by Plaintiff on June 2, 2006, states that the "[a]cceptance of an offer of employment does not create a contractual obligation upon Oakland County to continue employment in the future." (*Id.* at 4.) Furthermore, on June 2, 2006, Plaintiff signed a form acknowledging that she had received a copy of the County's Merit System Rules and was "expected to comply with these rules." (Pl.'s Mot. Ex. J.)

On June 13, 2006, while drawing blood from an inmate, Plaintiff was stuck with the needle on her left index finger. (Pl.'s Mot. Ex. L.) Plaintiff's wound was washed with soap and water and was covered with an alcohol pad. (*Id.*) She reported this incident to her supervisor at the time, Defendant Vicki Lopez. (*Id.*) After her shift on June 13, 2006, Plaintiff was treated at the North Oakland Medical Clinic. (Dfts.' Mot. Ex. E.) The treating physician stated that Plaintiff could return to work but was required to keep a

clean dressing on the wound until June 16, 2006.  (*Id.*)  Plaintiff believes that she

contracted Methicillin Resistant Staphylococcus Aureus ("MRSA") from the needle stick.

 (Pl. Dep. 91-92.)  MRSA is "an antibiotic-resistant bacterium that causes abscesses

and/or open sores on the infectee's body."  (Pl.'s Br. at 2.)

     After her needle stick, Plaintiff stated that she experienced "hot flashes, cold

sweats," and "was running a fever."  (Pl. Dep. at 92.)  On July 26, 2006, "an irregularly-

shaped wound" developed on Plaintiff's left hip.  (*Id.* at 91.)  Plaintiff went to see her

physician, Dr. Pashley, the next day.  (*Id.*)  Sometime in late July 2006, Plaintiff spoke

with Defendant Vicki Lopez about her wound.  (*Id.* at 101-02.)  Plaintiff showed her

wound to Defendants Vicki Lopez and Mark Morrissey in August 2006.  (*Id.* at 103-04.)

That same month, Plaintiff underwent two debridements or surgeries to remove the dead

skin or tissue surrounding her wound.  (Pl. Dep. at 21-23.)

     Between June 6, 2006 and her two surgeries in August 2006, Plaintiff missed work

on June 14, 15, 19, and 20 and July 9 and 10.  Plaintiff does not recall why she was absent

on these days and claims that she did not furnish doctor's notes for these absences

because her "supervisors" told her that a doctor's note was not needed unless she was

going to be absent for three consecutive days.  (*See* Pl. Dep. at 96).  Plaintiff was absent

from work several days in August and September 2006.  Notes from Dr. Pashley confirm

that Plaintiff was off work due to illness on August 3-9 and September 1-4.  In his

September 1, 2006 note, Dr. Pashley stated that Plaintiff must be excused until September

4 due to a wound on her left hip that was consistent with an infection, possibly MRSA.

(Dfts.' Mot. Ex. I.)  In addition, discharge instructions from Orion-Oxford Urgent Care

and the Henry Ford Hospital show that Plaintiff was discharged on August 4 and August 30, 2006, presumably after undergoing the two debridements.

Plaintiff submitted a resignation form on September 7, 2006.[4]  Before submitting her resignation form, which lists "Health Reasons" as the reason for her resignation, Plaintiff met with Defendants Margaret Schooley and Mark Morrissey.  During this meeting, Defendants Schooley and Morrissey informed Plaintiff that if she did not resign, her employment would be terminated.  Defendants Schooley and Morrissey told Plaintiff that she would not pass her mid-probationary review based on her absenteeism.  Defendants Schooley and Morrissey told Plaintiff that she had the option of resigning or being terminated for absenteeism, which would have a negative impact Plaintiff's nursing career.  (Pl. Dep. at 107; *see also* Pl.'s Resp. Ex. F, Margaret Schooley Dep. at 13.)

On September 15, 2006, Plaintiff faxed a document to the Oakland County Sheriff's Department stating that her "resignation was given only under coercion and [that she] signed the resignation form under duress."  (Dfts.' Mot. Ex. K.)  Plaintiff further stated:

> The results of the most recent lab work from the swab of the wound on my left hip have been received.  Upon conferring with my medical physician, we are certain that this wound was definitely contracted while at work at the [OCJ].  It is not fair to force me to resign when this injury was not my fault, but instead contracted at the workplace.  Therefore, I want you to process my workman's compensation claim as I had requested prior to my resignation.  I want compensation for the time I have had to be off for this injury.  I want to be

---

[4]Plaintiff's resignation form lists August 7, 2006 as the effective date of her resignation.  (Dfts.' Mot. Ex. J.)  At her deposition, however, Plaintiff testified that August 7, 2006 was listed as a mistake and her resignation form should have listed September 7, 2006 as the effective date of her resignation.  (Pl. Dep. at 75.)

> covered for all prior medical, specifically including doctor's
> visits, debridements, and hospitalizations, pharmaceutical,
> and supply expenses related to this injury, as well as any
> future expenditures.

(*See id.*)  This document was hand-delivered to the department handling workers'

compensation claims on September 19, 2006.  (*See id.*)

Many of the allegations in Plaintiff's amended complaint assert that Defendants hid

or conspired to conceal the "problem" OCJ was having with inmates infected with

MRSA.  Plaintiff testified that she was aware of about ten active MRSA infections while

she worked at the OCJ.  (Pl. Dep. at 36.)  Plaintiff also states that she never received any

training from the County.  (*Id.* at 44.)  Nonetheless, Plaintiff admits that based on the

training she received prior to becoming an employee at the OCJ she knew what to do in

the event of a needle stick, knew about blood-borne pathogens, and knew that MRSA

existed in institutional settings.  (*Id.* at 45.)

## II.    <u>Standard of Review</u>

This Court will grant summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  FED. R.

CIV. P. 56(c).  No genuine issue of material fact exists for trial unless, by viewing the

evidence in a light most favorable to the nonmoving party, a reasonable jury could return

a verdict for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510 (1986).  The moving party bears the burden of informing this Court of the

basis for its motion and identifying those portions of the record that establish the absence

of a material issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial.  FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53.  It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment.  *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III.  <u>Applicable Law and Analysis</u>

### A.  **Plaintiff's Procedural and Substantive Due Process Claims**

Counts II through IV of Plaintiff's amended complaint assert claims for alleged deprivations of Plaintiff's right to due process as guaranteed by the Fourteenth Amendment.  Plaintiff alleges that Defendants deprived her of due process under both the procedural and substantive components of the Due Process Clause.

#### 1.  <u>Procedural Due Process Claim (and Breach of Contract Claim)</u>

With respect to her procedural due process claim, Plaintiff argues that she had a protected property interest as a public employee.  The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State . . . shall deprive any person of life,

liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.
Procedural due process claims are analyzed under a two-part test. "First, the court must
determine whether the interest at stake is a protected liberty or property right under the
Fourteenth Amendment. Only after identifying such a right [does a court] continue to
consider whether the deprivation of that interest contravened notions of due process."
*Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)(citations omitted).

"A public employee whose employment may be terminated for just cause has a
protected property interest in continued employment." *Horton v. 48th Dist. Court*, 446 F.
Supp. 2d 756, 762 (E.D. Mich. 2006). Such a property interest can be created by "a
formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro.
Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004).

In Michigan, "[e]mployment contracts for an indefinite duration are presumptively
terminable at the will of either party for any reason or for no reason at all." *Rood v. Gen.
Dynamics Corp.*, 444 Mich. 107, 116, 507 N.W. 2d 591, 597 (1993)(citing *Lynas v.
Maxwell Farms*, 279 Mich. 684, 687, 273 N.W. 315, 316 (1937)). An employee can
overcome the presumption of at-will employment with "sufficient proof either of a
contractual provision for a definite term of employment or a provision forbidding
discharge absent just cause." *Id.* (citing *Rowe v. Montgomery Ward & Co.*, 437 Mich.
627, 636-37 473 N.W. 2d 268, 271 (1991)). Michigan "[c]ourts have recognized the
following three ways by which a plaintiff can prove such contractual terms: (1) proof of a
contractual provision for a definite term of employment or a provision forbidding
discharge absent just cause; (2) an express agreement, either written or oral, regarding job

security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee." *Lytle v. Malady*, 458 Mich. 153, 163, 579 N.W. 2d 906 (1998)(citations and internal quotations omitted).

As an initial matter, the Court notes that because at-will employment is the default rule under Michigan law and Plaintiff proffers no evidence of a contractual provision or express agreement creating just-cause employment, Plaintiff must prove that Defendants' policies and procedures created a legitimate expectation of just-cause employment. "Where the plaintiff argues a legitimate-expectation theory, the trial court should only allow the case to proceed if the 'policies are reasonably capable of being interpreted as promises of just-cause employment.'" *Mannix v. County of Monroe*, 348 F.3d 526, 534 (6th Cir. 2003)(quoting *Rood*, 444 Mich. at 140, 507 N.W. 2d at 607).

Plaintiff relies on her status as a probationary employee and argues that the Merit Rules she received when she was hired as a full-time employee and the procedures contained therein give rise to a legitimate expectation of just-cause employment. More specifically, Plaintiff relies on Merit System Rule 7.3.1. Plaintiff also contends that she believed that the Merit System Rules applied to her "because she was an employee." (Pl.'s Resp. Br. at 4.) Defendants argue that Plaintiff cannot show a legitimate expectation of just-cause employment under any of these arguments. This Court agrees with Defendants.

First, Plaintiff's status as a probationary employee cannot alone confer a legitimate expectation of just cause employment. *Rood*, 444 Mich. at 141, 507 N.W. 2d at 608.

Second, this Court does not believe that Merit System Rule 7.3.1, or any other Merit Rule provided as an attachment to Plaintiff's response, (*see* Pl.'s Resp. Ex. N), is "reasonably capable of being interpreted as [a] promise[] of just-cause employment." *Id.* at 140, 507 N.W. 2d at 607. Merit Rule 7.3.1 provides that "[d]uring a probationary period following an open competitive appointment or re-employment, an employee does not have regular Merit System status and does not have the right to appeal a dismissal, suspension or disciplinary action to the Personnel Appeal Board." (Pl.'s Resp. Ex. N, Merit Rule 7.3.1.) Plaintiff contends that although she did not have "regular Merit System status," she must have had some status as a probationary employee. Even if Plaintiff had some status under the Merit System Rules as a probationary employee, Merit Rule 7.3.1 specifically states that probationary employees do not have a right to appeal a dismissal. In this Court's opinion, a reasonable jury could not conclude that Merit Rule 7.3.1, when read as a whole, is capable of being interpreted as a promise of just-cause employment.

Finally, to the extent that Plaintiff relies on her belief that the Merit System Rules applied to her "because she was an employee," this argument is also without merit. Plaintiff's subjective belief that the Merit System Rules applied to her cannot create a legitimate expectation of just-cause employment. *Mannix*, 348 F.3d at 534 (citations omitted).

For the foregoing reasons, this Court finds that Plaintiff has failed to point to evidence showing that a genuine issue of material fact exists as to whether she had a legitimate expectation of just-cause employment. Consequently, Plaintiff cannot establish

that she had a protected property interest.  Similarly, Count X of Plaintiff's amended complaint, which asserts a claim for breach of contract based on an alleged legitimate expectation of a continuing employment relationship (and contains allegations that are almost identical to those contained in Plaintiff's procedural due process claim), is also without merit.  Therefore, Defendants are entitled to summary judgment on Count II and X of Plaintiff's amended complaint.

2.    Substantive Due Process Claims

In Counts III and IV of her amended compliant, Plaintiff asserts that Defendants violated the substantive due process component of the Fourteenth Amendment under two theories.  First, Plaintiff alleges that Defendants deprived her of her right to personal security and bodily integrity when they misled Plaintiff on the existence of MRSA at the OCJ and when Defendants consciously disregarded the risk of exposing Plaintiff to MRSA.  (*See generally* Count III of Am. Compl.)  Second, Plaintiff alleges that Defendants deprived her of the right to maintain her good name and reputation when Defendants knew of the substantial risk of employees in the OCJ contracting MRSA and consciously disregarded such risk.  (*See generally* Count IV of Am. Compl.)  According to Plaintiff, Defendants' actions or inactions were "conscience shocking."  (Am. Compl. ¶¶ 83, 100.)

Plaintiff's substantive due process claim based on the alleged deprivation of her right to personal security and bodily integrity is without evidentiary support.  In the section of her response brief devoted to this claim, Plaintiff merely recites what she believes is the applicable law.  Assuming the law cited by Plaintiff supports her claim that

a person can be deprived of his or her right to personal security and bodily integrity under circumstances similar to those present in this case, Plaintiff does not apply the law to the facts in this case, much less point to any evidence she claims supports this claim. Accordingly, Defendants are entitled to summary judgment with respect to Count III of Plaintiff's amended complaint.

With respect to Plaintiff's substantive due process claim based on the alleged deprivation of her right to maintain her good name and reputation, Plaintiff contends that "[a]s a member of the health profession, [she] relies upon her good name and job reputation." (Pl.'s Resp. Br. at 12.) Plaintiff also argues that her absences were for legitimate "medical leaves of absence for medical treatment, and forcing her to resign [*sic*] her job due to absenteeism is false and damages her reputation as a professional." (*Id.*) Finally, Plaintiff asserts that Defendants' alleged claim that she had a drug problem was also false.

Like her previously discussed substantive due process claim, Plaintiff has failed to offer any evidentiary support for her arguments. Therefore, Defendants are entitled to summary judgment on Count IV of Plaintiff's amended complaint.

### B. First Amendment Retaliation Claim

In Count I of her amended complaint, Plaintiff alleges that she was forced to resign, or was constructively discharged, in retaliation for exercise of her First Amendment rights. A prima facie case of First Amendment retaliation requires the following three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse

> action was taken against the plaintiff that would deter a
> person of ordinary firmness from continuing to engage in that
> conduct; and (3) there is a causal connection between
> elements one and two – that is, the adverse action was
> motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(en banc).

Plaintiff testified that she spoke with Defendant Morrissey about the "problem" with MRSA in the OCJ sometime in June 2006. (Pl. Dep. at 55-56.) Plaintiff argues that this is protected speech. To establish that her speech was protected by the First Amendment, Plaintiff must show that her statement to Defendant Morrissey "involved 'a matter of public concern,' as established by 'the content, form, and context of [the] given statement.'" *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 478 (6th Cir. 2006)(alterations in original)(quoting *Waters v. Churchill*, 511 U.S. 661, 668, 114 S. Ct. 1878, 1884 (1994) and *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 229 (6th Cir. 2005)). Whether Plaintiff engaged in protected speech is a question of law. *Id.* (citing *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001)).

Neither Plaintiff nor Defendants provide any meaningful analysis with respect to whether Plaintiff's conversation with Defendant Morrissey involved a matter of public concern. To the extent that Defendants argue that Plaintiff's conversation with Defendant Morrissey involved only her "personal interests," this Court disagrees. Seemingly, Defendants are arguing that because Plaintiff claims that she later contracted MRSA, her conversation with Defendant Morrissey about MRSA in the OCJ involved only her "personal interests." At the time Plaintiff spoke with Defendant Morrissey about the alleged MRSA outbreak in the OCJ, however, Plaintiff's needle stick had not yet

13

occurred and Plaintiff's wound had not yet appeared.  Nonetheless, given the lack of any meaningful analysis on this issue, this Court will assume for the purposes of its analysis of Plaintiff's First Amendment retaliation claim that Plaintiff's conversation with Defendant Morrissey involved constitutionally protected speech.

With respect to the second element, Plaintiff contends that she suffered an adverse employment action in the form of a constructive discharge.  Ordinarily, a constructive discharge occurs when an employer "deliberately create[s] intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit . . . ."  *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999).  The circumstances that occurred in this case do not fit neatly within this standard. Nevertheless, Plaintiff testified that she was forced to resign and that she did not sign the resignation form under her own "free will."  (Pl. Dep. at 179.)  Although Defendants proffer evidence suggesting that they gave Plaintiff the option of resigning as opposed to firing her so that Plaintiff's ability to work as a nurse in the future would not be jeopardized, this Court must construe the evidence in Plaintiff's favor.  Consequently, the Court concludes that there is a genuine issue of material fact as to whether Plaintiff was constructively discharged.[5]

Finally, to satisfy the third element of a First Amendment retaliation claim, the Sixth Circuit has stated that "the plaintiff must proffer evidence sufficient to raise the inference

---

[5]Because the Court has determined that a genuine issue of material fact exists as to whether Plaintiff was constructively discharged, the Court will assume that Plaintiff was constructively discharged for the purposes of its analysis of Plaintiff's remaining claims.

that his or her protected activity was a motivating factor for the adverse decision."
*Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004)(quoting *Arnett v. Myers*,
281 F.3d 552, 560-61 (6th Cir. 2002)). The plaintiff can do so using "[c]ircumstantial
evidence, like the timing of events or the disparate treatment of similar individuals."
*Arnett*, 281 F.3d at 560-61. If the plaintiff can satisfy its initial burden, the burden of
production then shifts to the defendant to "demonstrate that it would have taken the same
action in the absence of the protected activity." *Id.* at 561.

Plaintiff has failed to offer any evidence "sufficient to raise an inference" that her
speech "was a motivating factor for" her alleged constructive discharge. The record
before this Court reveals that she spoke with Defendant Morrissey once about MRSA in
the OCJ sometime in early June 2006, before her needle stick. Plaintiff's alleged
constructive discharge did not occur until September 7, 2006, three months after she
spoke with Defendant Morrissey. Moreover, Plaintiff does not refer to evidence of other
nurses or employees that were forced to resign after raising issues similar to those raised
by Plaintiff in her conversation with Defendant Morrissey. Based on the lack of any
probative circumstantial evidence suggesting that Plaintiff's speech was a "motivating
factor" for her constructive discharge, Defendants are entitled to summary judgment with
respect to Plaintiff's First Amendment retaliation claim.

### C.     State and Federal Law Disability Discrimination and Retaliation Claims

Counts V through VIII of Plaintiff's amended complaint assert disability
discrimination and retaliation claims under federal and state law. In Count V, Plaintiff
asserts a claim for disability discrimination under the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101-12213.  Count VI of Plaintiff's amended complaint alleges
an ADA retaliation claim.  Counts VII and VIII of Plaintiff's amended complaint are
brought pursuant to the Michigan Persons with Disabilities Civil Rights Act
("PWDCRA") , MICH. COMP. LAWS §§ 37.1101-1607, and assert claims for disability
discrimination and retaliation, respectively.  Because the language of the PWDCRA
"mirrors that of the ADA," *Smith v. Chrysler Corp.*, 155 F.3d 799, 804 (6th Cir. 1998),
the Court will reference only the ADA throughout its analysis.  Nonetheless, when
necessary the Court will reference both the ADA and the PWDCRA.

### 1.    Disability Discrimination under ADA and PWDCRA

The ADA prohibits an employer from discriminating "against a qualified individual
with a disability because of the disability of such individual in regard to job application
procedures, the hiring, advancement, or discharge of employees, employee compensation,
job training, and other terms, conditions, and privileges of employment."  42 U.S.C. §
12112(a).  Discrimination under the ADA includes "not making reasonable
accommodations to the known physical or mental limitations of an otherwise qualified
individual with a disability who is an applicant or employee, unless such covered entity
can demonstrate that the accommodation would impose an undue hardship on the
operation of the business of such covered entity."  *Id.* § 12112(b)(5)(A); *see also* MICH.
COMP. LAWS §§ 37.1202(1)(b),(g) and 37.1210.

Defendants argue that Plaintiff's ADA and PWDCRA disability discrimination
claims fail because Plaintiff does not have a "disability" within the meaning of either
statute.  Plaintiff argues that "[s]he had a physical impairment in the form of a large, open

wound on her left hip."  (Pl.'s Resp. Br. at 14.)

The ADA defines "disability" as (1)  "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) "a record of such impairment;" or (3) being regarded as having such an impairment."[6]  42 U.S.C. § 12102(2).  Although Count V of Plaintiff's amended complaint alleges that Defendants "perceived Plaintiff as being disabled," (Comp ¶ 112), Plaintiff does not address this alleged "disability" in her response brief.  Nor does Plaintiff contend that she has a "disability" based on "a record of such impairment."  Therefore, the Court will analyze Plaintiff's disability discrimination claims under the first definition of a "disability."

Defendants do not dispute that Plaintiff's wound is a physical impairment under the ADA; nor is there any dispute that working is a "major life activity."  Thus, the Court must determine if Plaintiff has presented evidence from which a reasonable jury could conclude that her wound "substantially limits" her ability to work.  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S. Ct. 2139, 2147 (1999)(stating that "[w]hether a claimant qualifies as having a disability requires an individualized inquiry").

"An 'impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation' under the ADA."  *Bryson v. Regis Corp.*, 498 F.3d 561, 576 (6th Cir. 2007).  Moreover, with respect to the "major life activity" of work, "substantially limits means significantly restricted in the ability to

---

[6]The PWDCRA defines "disability" in almost identical terms.  *See* MICH. COMP. LAWS § 37.1103(d).

perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(i).

Plaintiff argues that "[o]n two documented occasions" she missed work due to the wound she had on her left hip, as well as the attendant symptoms of MRSA. (Pl.'s Resp. Br. at 14 (citing Ex. I).) Furthermore, sometime in the middle of September 2006, shortly after her alleged discharge, Plaintiff returned to a temporary staffing agency that originally placed her in the OCJ, and in November 2006, Plaintiff obtained full-time employment with Residential Home Care. (Pl. Dep. at 11, 66.) Based on this evidence, Plaintiff cannot show that she was significantly restricted in performing "a class of jobs or a broad range of jobs." Because Plaintiff has failed to show that a genuine issue of material fact exits as to whether she had a "disability" within the meaning of either the ADA or the PWDCRA, Defendants are entitled to summary judgment as to Counts V and VII of Plaintiff's amended complaint.

## 2. ADA and PWDCRA Retaliation Claims

Counts VI and VIII of Plaintiff's amended complaint assert disability retaliation claims under the ADA and the PWDCRA. The ADA's retaliation provision provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a); *see also* MICH. COMP. LAWS § 37.1602(a). "A plaintiff may prevail on a disability-retaliation claim 'even if the underlying claim of disability fails.'"

*Bryson*, 498 F.3d at 577 (quoting *Soileau v. Guilford of Me.*, 105 F.3d 12, 16 (1st Cir. 1997)).  The same tripartite burden-shifting framework applicable to Plaintiff's disability-discrimination claim applies to his disability-retaliation claim.  *Weigel v. Baptist Hosp.*, 302 F.3d 367, 381 (6th Cir. 2002).  To establish a prima facie case of retaliation under the ADA or PWDCRA, Plaintiff must show: (1) that she engaged in a protected activity; (2) that Defendants had knowledge of Plaintiff's protected conduct; (3) that Defendants took an adverse employment action against her; and (4) that there was a causal connection between the protected conduct and the adverse employment action.  *Kuriatnyk v. Twp. of Bazetta*, 93 Fed Appx. 683, 686 (6th Cir. 2004)(unpublished).  "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 663 (6th Cir. 2000).  "If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action.  The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination."  *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997)(citations omitted).

Defendants first argue that Plaintiff cannot establish the first element of a prima facie case of disability retaliation.  Plaintiff argues she sought medical care and/or leave "to treat the wound from the MRSA infection she contracted at work."  (Am. Compl. ¶ 127; Pl.'s Resp. Br. at 15.)  In their reply, Defendants contend that "Plaintiff has no support for this assertion and fails to explain how seeking medical care is protected activity under the disability statutes."  (Dfts.' Rep. Br. at 4.)

Although the Sixth Circuit has never considered the issue, other courts have held that "requesting reasonable accommodations is protected activity for purposes of an ADA retaliation claim." *Garcia v. Third Fed. S&L Ass'n of Cleveland*, No. 1:06-cv-1990, 2007 WL 1235820, 2007 U.S. Dist. LEXIS 30887, at *16 (N.D. Ohio April 26, 2007) (collecting cases from "[a]t least six other circuits" holding that a request for a reasonable accommodation is a protected activity for purposes of an ADA claim). Moreover, "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 755, 782 (6th Cir. 1988).

In this Court's opinion, no reasonable jury could conclude, based on the evidence in this record, that Plaintiff engaged in any activity that Defendants could have construed was a request for a reasonable accommodation for her alleged disability. Plaintiff did not receive a definitive diagnosis that she had MRSA until after she was constructively discharged.[7] (*See* Pl.'s Resp. Ex. Q, St. John Lab Report (dated September 22, 2006) and Henry Ford Health System Lab Report (dated September 11, 2006).) Therefore, at most, the evidence adduced in this case shows that before Plaintiff was constructively discharged, she was absent from work, these absences *may* have been related to a MRSA infection, and Defendants were aware that Plaintiff *may* have had MRSA. (Dfts.' Mot. Ex. I, Doctor Pashley's Notes (the note excusing Plaintiff from work from September 1-4

---

[7]Although Plaintiff testified that there were two separate lab reports showing that she had an antibiotic resistant staph infection and that Defendants received the "Bi-County" lab report on August 12, 2006, the "Bi-County" lab report, she has not proffered the alleged "Bi-County" lab report.

states that "her wound is consistant [*sic*] [with] an infectious etiology – poss. MRSA");

*see also* Morrissey Dep. at 42 (stating that he was aware that Plaintiff mentioned that "she

was missing some of the days because of an alleged MRSA infection").)  Moreover, by

her own admission, Plaintiff never requested an accommodation in writing.  (Pl. Dep. at

147.)  This Court does not believe that Plaintiff's actions were sufficient to put

Defendants on notice that she was requesting an accommodation for her alleged

disability.[8]  Consequently, because Plaintiff is unable to establish that she engaged in any

activity protected by the ADA or the PWDCRA, she cannot establish a prima facie case

of disability retaliation.

Assuming *arguendo* that Plaintiff could establish a prima facie case of disability

retaliation, Plaintiff's disability retaliation claims would nevertheless fail because no

reasonable jury could conclude that Defendants' legitimate, non-discriminatory reason for

constructively discharging Plaintiff, i.e., her absenteeism, was pretextual.  The evidence

in this case shows that Plaintiff's frequent absences were a concern long before her needle

stick.  Defendants were aware of Plaintiff's frequent absences in her previous

employment and Defendant Morrissey was instructed to closely monitory Plaintiff's

attendance in light of her history of frequent absences.  (*See* Morrissey Dep. at 15-16;

Dfts.' Mot. Ex. N, Pamela Newsom Dep. at 8.)  Moreover, Plaintiff's absences as a

temporary employee also concerned Defendants.  (*See id.*)  Plaintiff has failed to proffer

---

[8]Furthermore, to the extent that Plaintiff claims she made a verbal request for an
accommodation on September 7, 2006, the day she was constructively discharged, (*see*
Pl.'s Dep. at 147), such a request for an accommodation, assuming that it was reasonable,
could not have caused Defendants to give her the option of resigning or being terminated.

evidence showing that her absenteeism was a pretextual reason for her constructive

discharge.  Therefore, Defendants are also be entitled to summary judgment as to

Plaintiff's disability retaliation claims on this separate ground.

### D.    Worker's Disability Compensation Act Claim

In Count IX of her amended complaint, Plaintiff alleges a retaliation claim under the

Michigan Worker's Disability Compensation Act ("WDCA"), MICH. COMP. LAWS §§

418.101-941.  Section 301 of the WDCA provides in pertinent part:

> A person shall not discharge an employee or in any manner
> discriminate against an employee because the employee filed
> a complaint or instituted or caused to be instituted a
> proceeding under this act or because of the exercise by the
> employee on behalf of himself or herself or others of a right
> afforded by this act.

*Id.* § 418.301(11).  In order to establish a prima facie case of retaliation under the WDCA,

Plaintiff must demonstrate that: (1) she asserted her right to workers' compensation

benefits; (2) the defendant knew that she asserted her right to workers' compensation

benefits; (3) she suffered an adverse employment action; and (4) there was a causal

connection between her assertion of her right to workers' compensation benefits and the

adverse employment action.  *Dortman v. ACO Hardware, Inc.*, 405 F. Supp. 2d 812, 822

(E.D. Mich. 2005)(citing *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 470, 606 N.W.

2d 398, 404 (1999)).

"The *McDonnell Douglas/Burdine* burden shifting approach applies to workers'

compensation retaliation claims."  *Id.*  "Once a plaintiff establishes a prima facie case, the

*McDonnel Douglas* approach shifts the burden to the defendant to articulate a legitimate,

non-discriminatory reason for the adverse employment decision." *Id.* (citations omitted).

If the defendant meets its burden of production, the plaintiff bears the burden of proving

that the defendant's legitimate, non-discriminatory reason was pretextual. *Id.*

Defendants contend that Plaintiff's WDCA retaliation claim fails for want of any

evidence that her constructive discharge was causally related to her attempt to obtain

workers' compensation benefits. On June 13, 2006, the day of Plaintiff's needle stick,

she completed an injury-on-the-job form, which was hand-delivered to the department

handling workers' compensation claims on July 5, 2006. (*See* Pl.'s Resp. Ex. L.)

Plaintiff, however, testified at her deposition that she did not pursue a claim for workers'

compensation benefits under the WDCA for her needle stick. (Pl. Dep. at 108.)

Moreover, Plaintiff also testified that she requested an injury-on-the-job form from

Defendant Lopez for her MRSA, but she never received one. (*Id.*) The next time

Plaintiff allegedly sought workers' compensation benefits was on September 15, 2006,

the day she sent the letter rescinding her resignation.

Plaintiff has failed to proffer evidence from which a reasonable jury could conclude

that her constructive discharge is causally connected to her request for workers'

compensation benefits. To the extent that Plaintiff relies on the submission of her June

13, 2006 injury-on-the-job form as the "assertion" of her right to workers' compensation

benefits, Plaintiff testified that she did not pursue workers' compensation for her needle

stick. (Pl. Dep. at 108.) Furthermore, to the extent Plaintiff is relying on her request for

an injury-on-the-job-form from Defendant Lopez, this Court does not believe that

Plaintiff has adduced evidence showing that this may have caused her constructive

discharge. There is no evidence that Defendant Lopez recommended that Plaintiff be terminated or communicated Plaintiff's request to anyone involved with Plaintiff's discharge. Similarly, Defendant Newsom testified that the County's risk management department handles workers' compensation claims and there is no evidence that anyone involved with Plaintiff's discharge spoke with risk management personnel before September 7, 2006. (Dfts.' Mot. Ex. N, Newsom Dep. at 13.) Finally, Plaintiff's post-resignation assertion to workers' compensation could not have caused her prior constructive discharge. Based on the foregoing, this Court holds that Plaintiff's WDCA retaliation claim fails for want of any evidence establishing a causal connection between her assertion of her right to workers' compensation benefits and the adverse employment action. Defendants are thus entitled to summary judgment with respect to Count IX of Plaintiff's amended complaint.

### E.      Municipal Liability Claim Against the County

In Count XI of her amended complaint, Plaintiff alleges a claim against the County pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). Plaintiff claims that the County should be held liable for failing to properly train *her* and that the alleged failure to train *her* caused or contributed to *her* injury. Contrary to Plaintiff's assertion, a failure to train claim requires a plaintiff to prove that a municipality's failure to train one of its employees caused a violation of the plaintiff's constitutional rights. *See Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006). Plaintiff does not cite and this Court is not aware of any case holding that a municipality can be liable under *Monell* and its progeny for its failure to train a municipal employee

24

who is then subsequently injured.  In fact, the cases cited by Plaintiff in her brief illustrate as much, because they involve a municipality's failure to adequately train its police officers who violated the plaintiff's constitutional rights.  *See City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992).  Consequently, Count XI of Plaintiff's amended complaint is without merit.

In the alternative, because the County cannot be held liable unless there is a showing of liability on the part of its officials, this Court's previous determination that the County's officials did not violate Plaintiff's constitutional rights forecloses Plaintiff's claim against the County.  *Meals v. City of Memphis*, 493 F.3d 720, 731 (2007)(citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1985)).

**F.      Gross Negligence and Conspiracy Claims**

Defendants are also entitled to summary judgment with respect to Plaintiff's state law claims for civil conspiracy (Count XII) and gross negligence (Count XIII) based on Plaintiff's failure to proffer any evidence in support of these claims.  With respect to her civil conspiracy claim, Plaintiff, without pointing to any evidence, argues that "Defendants conspired together to force Plaintiff to resign [*sic*] her job due to her contraction of MRSA."  (Pl.'s Resp. Br. at 19.)  Likewise, with respect to her gross negligence claim, Plaintiff merely argues that "Defendants' actions show they did not care about Plaintiff's rights and whether or not they violated them and did not care that MRSA would spread due to their negligence."  (*Id.* at 20.)  Plaintiff's unsubstantiated arguments are insufficient to create a genuine issue of material fact.  Consequently,

Defendants are entitled to summary judgment as to Counts XII and XIII of Plaintiff's amended complaint.

## IV.  Conclusion

For the reasons set forth above, Defendants are entitled to summary judgment with respect all of Plaintiff's claims.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Christopher J. Trainor, Esq.
Rick J. Patterson, Esq.
Steven M. Potter, Esq.